# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JESSICA M. OLSON,**

        **Plaintiff,**

    v.                                Case No. 20-CV-1137

**KILOLO KIJAKAZI,**[1]
**Acting Commissioner of the Social Security Administration,**

        **Defendant.**

## DECISION AND ORDER

**1. Introduction**

Alleging she has been disabled since July 24, 2015 (Tr. 28), plaintiff Jessica Olson seeks disability insurance benefits. After her application was denied initially (Tr. 28) and upon reconsideration (Tr. 28), a hearing was held before Administrative Law Judge (ALJ) Chad Gendreau on May 14, 2019 (Tr. 28). On June 4, 2019, the ALJ issued a written decision concluding that Olson was not disabled. (Tr. 40.) After the Appeals Council denied Olson's request for review on May 28, 2020 (Tr. 1), Olson filed this action. All

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 6), and the matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Olson has not engaged in substantial gainful activity since July 24, 2015, the alleged onset date. (Tr. 30.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Olson has the following severe impairments: "degenerative disc disease of the lumbar spine and obesity." (Tr. 30.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the

claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that Olson's impairments did not meet or medically equal a listed impairment. (Tr. 33.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Olson has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except she must never climb ladders, ropers [sic], or scaffolds. The claimant can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She can balance frequently and must be allowed to sit and stand at her discretion while remaining on task.

(Tr. 33.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Olson was "unable to perform any past relevant work." (Tr. 39.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step, relying on testimony from a vocational expert, the ALJ concluded that there were jobs that Olson could perform, including call out operator (Dictionary of Occupational Titles (DOT) Number 237.367-014); document preparer (DOT Number 249.587-018); and printed circuit board inspector (DOT Number 726.684-110). (Tr. 39-40.) Therefore, Olson was not disabled.

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision

even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**4. Analysis**

Olson argues that the ALJ erred by (1) including in the RFC a requirement that Olson remain on-task while exercising a sit/stand option, and (2) failing to properly consider her subjective symptoms.

**4.1 On-Task Requirement**

Olson argues that the ALJ erred in stating in the RFC that Olson "must be allowed to sit and stand at her discretion while remaining on task." (ECF No. 14 at 8.) She argues that the on-task requirement is not a statement of her functional abilities and that whether she could exercise the sit/stand option while remaining on task was a question for the vocational expert to answer, not something for the ALJ to assume without explanation. (ECF No. 14 at 8-11.)

The Commissioner responds that it was permissible for the ALJ to include this on-task requirement because Olson did not show she would be off task while exercising the sit/stand option. (ECF No. 21 at 18-19, 20-22.) The Commissioner also argues that Olson failed to question the vocational expert about whether a person could remain on task while exercising a sit/stand option. (ECF No. 21 at 18-19.)

The ALJ asked the vocational expert whether a hypothetical individual with limitations like Olson's could perform work in the national economy if that "individual would require the option to or stand at the workstation at their discretion while remaining on task." (Tr. 64-65.) Whether a person can exercise a sit/stand option while remaining on task is generally a question for the vocational expert to answer. *See Green v. Saul*, No. 19-CV-528, 2020 WL 1150447, at *5, 2020 U.S. Dist. LEXIS 41061, at *14-15 (E.D. Wis. Mar. 10, 2020). Because the ALJ's hypothetical assumed that a person would stay on task while changing positions, the vocational expert did not testify that a person can remain on task while exercising a sit/stand option. Moreover, the ALJ did not explain why the evidence supported a finding that Olson would remain on task while changing positions. Assuming that Olson would remain on task while exercising a sit/stand option without explaining the basis for that assumption could constitute error requiring remand. *See Pollari v. Berryhill*, No. 18-C-178, 2019 WL 293238, at *2-3, 2019 U.S. Dist. LEXIS 10758, at *4-5 (E.D. Wis. Jan. 23, 2019).

However, Olson does not argue that she would be unable to stay on task while changing positions. *Compare Reichart v. Saul*, No. 18-CV-1344, 2019 WL 3976946, at *2, 2019 U.S. Dist. LEXIS 142493, at *3-5 (E.D. Wis. Aug. 21, 2019) (finding harmless error in including an on-task requirement because the claimant did not argue he would be off task during the workday) *with Peissig v. Saul*, No. 20-CV-198, 2021 WL 1116477, at *3, 2021 U.S. Dist. LEXIS 55573, at *6-8 (E.D. Wis. Mar. 24, 2021) (finding error in including

an on-task requirement where the claimant argued that his need to take frequent breaks showed his inability to remain on task during the workday) and *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) (finding error in including an on-task requirement where the claimant argued that his need to take frequent breaks showed his inability to remain on task during the workday). Moreover, nothing in the record suggests that on remand the ALJ would conclude that Olson could not remain on task while changing positions; while Olson testified that her pain made her need to change positions often, she did not say that changing positions made her lose concentration or required her to stretch or rest her back. (Tr. 57-58.) *Cf. Green*, 2020 WL 1150447, at *4-5, 2020 U.S. Dist. LEXIS 41061, at *11-14 (finding error in including an on-task requirement where there was "significant evidence" that claimant's pain affected his concentration).

Because there is no evidence that Olson would be unable to stay on task while changing positions, the court can predict with confidence that the ALJ would not reach a different result on remand if required to explain the basis for concluding that Olson would remain on task while exercising the sit/stand option. Therefore, any error in this regard was harmless and does not entitle Olson to remand. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

**4.2 Olson's Subjective Symptoms**

An ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work related activities...." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

The ALJ must also consider, to the extent they are relevant, the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ stated:

After careful consideration of the evidence, the undesigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 34.)

Olson argues that the ALJ did not follow SSR 16-3p when evaluating her subjective statements about her lower back pain. (ECF No. 14 at 21.) She argues that the ALJ discounted her pain and instead emphasized statements by Dr. Jeffrey Jacoby, Olson's orthopedic spine surgeon, that her condition had improved following her 2015 back surgery (ECF No. 14 at 12-14, 15-16) and suggesting that she was addicted to pain medication (ECF No. 14 at 14-15). She also argues that the ALJ over-valued normal objective exam findings while ignoring several abnormal findings (ECF No. 14 at 16), including her sacroiliitis (ECF No. 14 at 17-18). She also argues that the ALJ impermissibly inferred her ability to perform sedentary work from her ability to perform household activities (ECF No. 14 at 18-19) and from her brief return to her previous heavy work (ECF No. 14 at 20-21).

The Commissioner responds that the ALJ's evaluation of Olson's subjective symptoms was consistent with the record. (ECF No. 21 at 23.) The Commissioner argues that the ALJ discussed Olson's statements about lower back pain throughout his decision and that it was permissible for the ALJ to discount those statements when they were inconsistent with objective medical evidence. (ECF No. 21 at 23-24.) The Commissioner also argues that the ALJ discussed both abnormal objective findings (including her sacroiliitis) and normal objective findings. (ECF No. 21 at 12-14.)

### 4.2.1 The ALJ's Consideration of Statements Suggesting Addiction and the Success of Surgery and of Exam Findings

An ALJ must provide "specific reasons for the weight given to the individual's symptoms." SSR 16-3p. Doing so requires the ALJ to "build a logical bridge from the evidence to his conclusion." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). Summarizing the medical evidence and then offering a conclusion is not enough to satisfy this requirement. *See Krevs v. Saul*, No. 18-CV-1742, 2020 WL 58068, at *2, 2020 U.S. Dist. LEXIS 1236, at *6-7 (E.D. Wis. Jan. 6, 2020).

The ALJ's decision here exemplifies this sort of insufficiency. The ALJ summarized the medical evidence but failed to connect that evidence to his conclusion, leaving his reasons for discrediting Olson's symptoms unexplained. As the ALJ's summary makes clear, there is evidence to suggest that Olson's symptoms were not as severe as she alleged, including the statements suggesting she is addicted to pain medication (Tr. 35-36) and that her 2015 surgery was successful (Tr. 35-36). But there is

also evidence supporting her claims of pain. The ALJ referenced this contrary evidence throughout his decision, noting, for instance: "However, the claimant continued to receive treatment for her back and leg pain. She continued to receive narcotic pain medication from a pain management clinic. The claimant had a spinal cord stimulator permanently implanted." (Tr. 36.) But in every instance he failed to explain why he gave this evidence less weight than the evidence suggesting her symptoms were not as severe as alleged. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (concluding that an ALJ can consider evidence of an addiction problem but that he must "explain his rationale for crediting the [addiction] evidence over the contrary evidence"); *Steadman v. Saul*, No. 20-CV-190, 2021 WL 1087042, at *4, 2021 U.S. Dist. LEXIS 53169, at *10-11 (E.D. Wis. Mar. 22, 2021) (finding error where the ALJ "failed to explain how the fact that [the claimant] recovered well after her surgeries suggests somehow that her symptoms were not as severe as she reported").

The ALJ similarly failed to explain why he gave less weight to abnormal exam findings, like Olson's noted antalgic gait (Tr. 36, 746), than to normal findings. *See Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018) (holding that the ALJ "may not select and discuss evidence that favors [his] ultimate conclusion" but "must confront evidence that does not support [his] conclusion and explain why it was rejected") (internal citations omitted).

In short, the ALJ failed to explain why he discredited Olson's testimony regarding the severity of her symptoms. This failure left an unbridgeable gap between the evidence and the ALJ's conclusion and is grounds for remand. *See Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) ("We will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong' meaning it lacks explanation or support." (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014))). On remand the ALJ must explain why he gave certain evidence more weight than other evidence and how those decisions informed his overall conclusion.

**4.2.2 Olson's Household Activities**

The ALJ concluded, "Even though [Olson] reported that she needs help after one load of laundry, her ability to clean her home and to do a load of laundry is consistent with the ability to perform a reduced range of sedentary work with a sit/stand option." (Tr. 36.) An ALJ must consider a claimant's daily activities, like housework, in his evaluation of the claimant's symptoms, but he must be careful before comparing one's daily activities with an ability to engage in full-time employment. *See Hughes v. Astrue*, 705 F.3d 276, 278 (7th Cir. 2013); *Forsythe v. Colvin*, 813 F.3d 677, 679 (7th Cir. 2016). As the United States Court of Appeals for the Seventh Circuit has noted several times, there are "critical differences between activities of daily living and activities in a full-time job," including "that a person has more flexibility in scheduling the former than the latter" and "can [also] get help from other persons." *Hughes*, 705 F.3d at 278 (citing

12
Case 1:20-cv-01137-WED    Filed 08/31/21    Page 12 of 15    Document 23

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)); *see also Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008); *Gentle v. Barnhart*, 430 F.3d 865, 867–68 (7th Cir. 2005); *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 248–49 (6th Cir. 2007).

The ALJ erred by not explaining how Olson's limited ability to do some household chores was "consistent with the ability to perform a reduced range of sedentary work with a sit/stand option." *See Weyland v. Saul*, No. 19-CV-1531, 2020 WL 5876062, at *6, 2020 U.S. Dist. LEXIS 183715, at *17 (E.D. Wis. Oct. 2, 2020) ("In stating that [the claimant's] ability to do household chores 'suggests that she could still perform a limited range of light work[,]' the ALJ erred by failing to explain how [the claimant's] ability to perform certain daily activities suggested her ability to work full time."). The record shows that, because of her pain, household chores sometimes take Olson hours or days to complete, and that she often needs assistance. Preparing a "real meal," for example, "takes all day" because she "can't stand there to do it." (Tr. 59.) Doing other housework may take her days because her pain may force her to take a break, leaving the work unfinished "until the next day or so." (Tr. 59.) Her husband and children must "pick up the slack" and finish the chores when she otherwise cannot (Tr. 60, 189, 207), and she also needs assistance when grocery shopping (Tr. 59). Without assistance, it may take her several days to finish her grocery shopping because she can only shop in thirty-minute increments before needing to return home and rest. (Tr 208.)

While the ALJ acknowledged that Olson needs help after one load of laundry (Tr. 36), he ignored these additional limitations in her ability to perform daily activities. *See Craft*, 539 F.3d at 680 (instructing the ALJ on remand to consider additional limitations on the claimant's ability to perform daily activities); *Smith v. Colvin*, No. 14-CV-1533, 2016 WL 707021, at *3, 2016 U.S. Dist. LEXIS 21233, at *7-8 (E.D. Wis. Feb. 22, 2016) (finding error where the ALJ ignored testimony that the claimant needed the assistance of others to complete household chores). Moreover, this evidence suggests that Olson's ability to do housework depends on flexible scheduling and assistance from others.

In short, the ALJ placed undue weight on Olson's ability to do housework. Moreover, he failed to explain why her ability to do housework was "consistent with the ability to perform a reduced range of sedentary work with a sit/stand option." On remand, the ALJ must reconsider the portions of his decision that rely on Olson's household activities and explain any inferences that he might draw from her household activities about her ability to engage in full-time employment.

### 4.2.3 Olson's Return to Work

The ALJ stated that, "A worsening of [Olson's] lumbar back pain considered in combination with [her history of performing very heavy work] supports [her] ability to perform a reduced range of sedentary work." (Tr. 36.) But he did not explain how Olson's ability to previously perform heavy work is consistent with her present "ability to perform a reduced range of sedentary work." While the record supports a finding

that Olson's worsening condition has made her unable to perform her prior heavy work, it does not necessarily follow that she is now able to perform a reduced range of sedentary work. In fact, Olson's failed attempt to return to work at her prior job at a reduced level suggests the opposite. (Tr. 55.) On remand, the ALJ must explain why Olson's ability to previously perform heavy work is consistent with her "ability to perform a reduced range of sedentary work."

5. Conclusion

While the ALJ did not err in including an on-task requirement in the RFC, he did err in his evaluation of Olson's subjective symptoms. His failure to explain why he weighed some evidence over other evidence requires remand. On remand, however, he must address not only this failure, but also explain why Olson's ability to do housework and her prior ability to do heavy work is consistent with her ability to perform a reduced range of sedentary work.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 31st day of August, 2021.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge